IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARNOLD R. HOCKENSMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. No. 10-961-SLR | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

---

Arnold R. Hockensmith, Felton, Delaware.  Pro se Plaintiff.

Charles M. Oberly III, United States Attorney, Wilmington, Delaware and Patricia A. Stewart, Special Assistant United States Attorney, Office of the General Counsel Social Security Administration.  Of Counsel: Nora Koch, Esquire, Acting Regional Chief Counsel, Region III and Charles J. Kawas, Esquire, Assistant Regional Counsel of the Office of the General Counsel, Philadelphia, Pennsylvania.  Counsel for Defendant.

---

**MEMORANDUM OPINION**

Dated:  November 30, 2012
Wilmington, Delaware

## I. INTRODUCTION

Arnold R. Hockensmith ("plaintiff") appeals from a decision of Michael J. Astrue, the Commissioner of Social Security ("defendant"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI, of the Social Security Act (the "Act"). 42 U.S.C. §§ 401-434, 1381-1383f. The court has jurisdiction pursuant to 42 U.S.C. § 405(g).[1]

Currently before the court are the parties' cross-motions for summary judgment. (D.I. 18, 29, 32)[2] Plaintiff seeks remand for a new hearing or an award of benefits from January 20, 2006 to December 19, 2008. For the reasons set forth below, plaintiff's motions will be granted and defendant's motion will be denied.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed his claim for DIB and SSI applications on August 24, 2006, alleging disability since the amended onset date of January 20, 2006[3] due to spinal disorders,

---

[1]Under § 405(g), [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . . 42 U.S.C. § 405(g).

[2]Plaintiff filed two identical motions for summary judgment and supporting briefs. The first on November 4, 2011 (D.I. 18, 19), and the second on February 17, 2012 (D.I. 29, 30) In addition, on three separate occasions, he filed identical physical residual functional capacity ("RFC") questionnaires prepared by Lyndon Cagampan, D("r. Cagampan) dated August 20, 2009. (See D.I. 6, 20, 37)

[3]Plaintiff filed an application for DIB and SSI in 2004, denied on January 19, 2006. (D.I. 22, transcript ("Tr.") 33-42) Thereafter, he amended his alleged disability onset date to January 20, 2006. (Id. at 285-86)

bipolar/depression, and a neck condition. (D.I. 22, Tr. 13-14, 166, 171, 243) Plaintiff's applications were denied initially and on reconsideration. (*Id.* at 90-95) Thereafter, plaintiff requested a hearing which took place before an administrative law judge ("ALJ") on September 16, 2008. Counsel represented plaintiff at the hearing, and plaintiff and a vocational expert ("VE") testified. (*Id.* at 11-55)

On December 19, 2008, the ALJ issued an unfavorable decision, finding plaintiff not disabled and denying his claims for DIB and SSI. (*Id.* at 74-87) The ALJ found that, while plaintiff could not perform his past work, he could perform a limited range of light work available in the national economy. Plaintiff sought review by the Appeals Council, but it denied his request for review and, therefore, the ALJ's decision became the final agency decision subject to judicial review. (*Id.* at 1-4) On November 9, 2010, plaintiff, proceeding *pro se*, filed the current action for review of the final decision. (D.I. 1)

## B. Background

### 1. Medical history

Plaintiff received medical and mental health treatment at the Wilmington Veteran's Hospital between 2004 and 2008 for a variety of conditions including cervical spondylosis without myelopathy, spinal stenosis in the cervical region, lumbosacral spondylosis without myelopathy, cervicalgia, unspecified hyperlipidemia, chronic obstructive pulmonary disease ("COPD"), bipolar disorder, agoraphobia with panic disorder, allergies, gastroesophageal reflux disorder, low back pain, depressive

2

disorder, scoliosis, pain management, and foot problems. (*Id.* at 265-371, 397-402, 404-62)

An August 16, 2006 MRI of plaintiff's cervical spine revealed degenerative disc disease and some moderate to severe spinal stenosis, but no evidence of cord edema or gliosis. (*Id.* at 370-71)  On December 18, 2006, Joyce Goldsmith, M.D. ("Dr. Goldsmith"), completed a physical RFC assessment and opined that plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and was unlimited in his ability to push and/or pull. (*Id.* at 236-43)  In addition, Dr. Goldsmith opined that plaintiff had some postural, manipulative, and environmental limitations, but no communicative or visual limitations. (*Id.* at 238-40)

Plaintiff underwent cervical facet nerve blocks in March 2007 and tolerated the procedures well. (*Id.* at 263-64)  On June 7, 2007, Michael Borek, D.O. ("Dr. Borek"), completed a physical RFC assessment of plaintiff. (*Id.* at 383-90)  Dr. Borek opined that the maximum RFC for plaintiff would be sedentary and that plaintiff could occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; and was limited in his ability to use his arms to push and/or pull. (*Id.* at 384)  He also opined that plaintiff had some postural, manipulative, and environmental limitations, but no communicative or visual limitations. (*Id.* at 384-86, 389)

As of August 8, 2007, plaintiff exhibited no musculoskeletal weakness or

numbness. (*Id.* at 441)  Plaintiff presented to Franklin Irwin, M.D. ("Dr. Irwin"), in

September and November 2007. (*Id.* at 393-96)  Plaintiff received a cervical facet

nerve block injection in September 2007 and a cervical facet ablation injection in

November 2007. (*Id.* at 393, 395)  He tolerated both procedures well without complaint.

(*Id.*)  In December 2007, plaintiff had a decreased range of motion in his cervical spine,

but he exhibited a normal gait, no atrophy was noted in his hands or left arm, a sensory

examination was normal, and he had full range of motion of his shoulders, elbows,

wrists, and hands. (*Id.* at 426)  On the same date, electrodiagnostic studies indicated

normal findings with no evidence of carpal tunnel syndrome, peripheral neuropathy, or

cervical radiculopathy affecting plaintiff's left arm. (*Id.* at 427)

In April 2008, Stephen Penny, M.D. ("Dr. Penny"), evaluated an MRI examination

of plaintiff's lumbar spine. (*Id.* at 403)  It revealed scoliosis and significant end-plate

changes and facet disease at multiple levels in the lumbar spine, but there was no

evidence of disk herniation, nerve root canal stenosis, or central spinal stenosis. (*Id.*)

Plaintiff reported in May 2008 that he had lost 30 pounds and, despite having some

pain, was doing better and felt much better. (*Id.* at 405)  Throughout 2007 and 2008,

plaintiff exhibited 5/5 strength in his arms and legs. (*Id.* at 311, 406, 414, 435, 452)

Plaintiff was evaluated by licensed clinical psychologist Kate McGraw, Ph.D.

("Dr. McGraw"), in February 2007. (*Id.* at 258-60)  Dr. McGraw noted that plaintiff

walked without evidence of a limp or gait impairment; he appeared alert and oriented to

person, place, and time/date; he was cooperative; his judgment was fair and his

4

attention, concentration, and recent memory appeared intact. (*Id.* at 259) Diagnoses included bipolar disorder, polysubstance abuse disorder, panic disorder, and post traumatic stress disorder. (*Id.* at 259) Plaintiff's Global Assessment of Functioning ("GAF") score was 65.[4] (*Id.* at 259)

On August 8, 2007, plaintiff was alert and oriented to person, place, time, and situation. (*Id.* at 441) Notes dated April 2008 indicate that plaintiff's bipolar disorder had improved, he was alert and oriented with euthymic mood, with organized thinking, no evidence of delusions or thought disorganization, improved insight, and improved impulse control. (*Id.* at 409)

### 2. The administrative hearing

#### a. Plaintiff's testimony

Plaintiff was born on August 16, 1958 and was fifty years old on the date of the hearing. (*Id.* at 15) He has a high school education, some training certificates, and last worked in 2005 as a machine operator. (*Id.* at 16) He has a driver's license and is able to drive, but finds it difficult. (*Id.* at 17)

Plaintiff testified that he has been unable to work since January 20, 2006 due to spurs on his cervical spine and pain. (*Id.*) The pain is mainly on the left side shooting down the neck into the arm. (*Id.* at 17-18) There is constant pain, worse at times. (*Id.* at 18) There are also cervical issues with intense pain on the right side. (*Id.*)

---

[4]A GAF score of 61-70 corresponds to an individual with "some mild symptoms" or an individual who is "generally, functioning pretty well." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

Plaintiff engages in pain management, had a series of nerve blocks, participated in physical therapy, and takes pain medication and muscle relaxers. (*Id.* at 19-20) The medication causes drowsiness and, even after taking medication, plaintiff described the pain as an eight on a scale of one to ten. (*Id.* at 21-22) Most treatment did not significantly help with the pain. (*Id.* at 23) At the time of the hearing, plaintiff was scheduled to meet with a surgeon and he intended to have surgery. (*Id.* at 20-21)

Plaintiff testified that certain motions cause an increase in pain, his neck locks up, and he has limited motion. (*Id.* at 22) When the pain is severe enough, it causes a migraine headache that can last anywhere from three to four hours to all night. (*Id.* at 24) In addition, plaintiff has difficulty moving his head left and right and looking up and down, particularly looking up. (*Id.* at 25) He can raise his right arm, but is unable to raise his left arm. (*Id.* at 26) He has issues with his left hand and does not use it, but has grip strength in his right hand. (*Id.*)

Plaintiff's back pain begins at the beltline and spreads down the back of his legs, at times to the left calf area and to the back of the right knee area. (*Id.* at 27-28) He sometimes has numbness in the left leg and foot. (*Id.* at 28-29) The pain is constant and similar to a knot with the pain in the legs described as a shooting sensation. (*Id.*) Treatment for back pain has included trigger point in the lower back for muscle spasms and the use of a TENS unit which somewhat relieved his symptoms. (*Id.* at 29) He takes the same medications for the back as he does for the cervical spine, and it reduces the pain to seven on a scale of one to ten. (*Id.* at 30) However, quite often,

plaintiff experiences back pain at a ten, normally in the morning, even after taking medication. (*Id.*)

Plaintiff has agoraphobia and a bipolar disorder and is treated for the conditions. (*Id.* at 31) The bipolar disorder causes manic and depressive stages. (*Id.* at 31-32) At times plaintiff will not sleep for days while at other times he will sleep for days. (*Id.*) He estimates that he has twenty percent bad days, compared to ten percent good days. (*Id.* at 33-35) Plaintiff takes a mood stabilizer and medication for anxiety attacks that, on average, occur approximately three times per week. (*Id.* at 35-36)

At the time of the hearing, Plaintiff testified that he is able to sit in a chair (with shifting) for a couple of hours, can stand for six to eight minutes before sitting, can walk from 100 to 150 feet before taking a break, and can bend his knees and pick something off the floor (with pain). (*Id.* at 37-39) Plaintiff takes care of his hygiene, cooks using the microwave, reads, and goes to church but avoids activities that cause pain. (*Id.* at 39-40, 42)

### b. VE's testimony

At the administrative hearing, the VE opined that plaintiff has no transferable skills from his previous jobs. (*Id.* at 48-49). The ALJ posed a detailed hypothetical to the VE to assume

> a person who's 47 years of age on his onset date. Has a twelfth grade education, past relevant work as indicated. He's right handed by nature. Suffering from various problems. He has degenerative disc disease of the cervical. The file indicates he might have some mild scoliosis. And depression with a bipolar component. And he indicates he weighs 227 pounds, so mild to moderate obesity with a BMI (i.e., body mass index) of 35 to 5 [phonetic] . . . . COPD [controlled by inhalers], GERD [controlled by medication] . . . . all [that] cause him to have moderate pain and

discomfort. Some radiation of that pain to the left lower extremity per the file. And some depression with infrequent mood swings and anxiety attacks. Somewhat relieved by his medications, however. Without significant side effects, but he indicates drowsiness and confusion from one or a combination. And if I find [] that he needs to have simple, routine, unskilled jobs due to his pain and depression, low stress, low concentration, low memory. He's able to attend tasks, however, and complete schedules. SVP (i.e., specific vocational preparation) 2 jobs or less . . . . And if I find that he has some mild or moderate ability to perform his ADL's (i.e., activities of daily living) and his social ability, and to maintain his concentration, persistence, and pace. No episodes of decompensation . . . . And jobs that would have little interaction with the public, coworkers, or supervisors. And if I find he can lift 10 pounds frequently, 20 on occasion. Stand for 30 minutes, sit for 30 minutes consistently on an alternative basis during an eight-hour day, five days a week. That he'd have to avoid heights and hazardous machinery, temperature and humidity extremes, vibrations, and no prolonged climbing, balancing, and stooping. And I mean by that no more than once or twice an hour if needed. And jobs that would allow him to avoid repetitive neck turning due to his cervical problem. And would be mildly limited in push and pull and grip in that left upper extremity. And due to his COPD avoid odors, gases, fumes, dust, and like substances. But with his limitations seems to be able to do light work activities.[5] Would there be jobs you can give me with those limitations in significant numbers in the national economy?

(*Id.* at 49-51) The VE responded that jobs available included a light unskilled office

helper (DOT 372.667-010), a light unskilled security clerk (DOT 372.667-010), and a

light unskilled information clerk (DOT 237.367-028). (*Id.* at 51) The VE explained that

the Dictionary of Occupational Titles ("DOT") does not specify a sit-stand option, but

---

[5]Light work is defined in the Social Security Regulation as follows: (b) Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

opined that, based upon the jobs as described in the DOT, flexibility in the performance

of the jobs would exist. (*Id.*) The VE further opined that plaintiff would be unable to

perform his past work with the limitations described. (*Id.* at 52)

### 3. The ALJ's Findings

Based on the factual evidence and the testimony of plaintiff and the VE, the ALJ

determined that plaintiff had not been under any type of disability within the meaning of

the Act from January 20, 2006 through the date of his decision. The ALJ's findings are

summarized as follows:[6]

> 1. The claimant met the insured status requirements of the Act through
> March 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since
> January 20, 2006, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*
> and § 404.971 *et seq.*).
>
> 3. The claimant has the following severe impairments:  cervical and
> lumbar spondylosis, cervical facet syndrome, and bipolar disorder (20
> C.F.R. § 404.1521 *et seq.* and § 416.921 *et seq.*).
>
> 4. The claimant does not have an impairment or combination of
> impairments that meets or medically equals one of the listed impairments
> in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525,
> 404.1526, 416.925 and 416.926).
>
> 5. The claimant has the residual functional capacity to perform light work
> as that term is defined in 20 C.F.R. §§ 404.1567(b) and 416.976(b).
>
> 6. The claimant is unable to perform any past relevant work (20 C.F.R. §§
> 404.1565 and 416.965).
>
> 7. The claimant was born on August 16, 1958 and was 47 years old,
> which is defined as a younger individual age 18-49, on the alleged
> disability onset date. During the pendency of his application, the claimant

_____

[6]The ALJ's rationale, which was interspersed throughout the findings, is omitted
from this recitation.

turned 50 years of age, which is defined as an individual closely approaching advanced age (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined by the Act, from January 20, 2006 through December 19, 2008, the date of the decision (20 C.F.R. §§ 404.1520(g) and 416.962(g)).

(D.I. 22, Tr. 74-87)

## III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are

conclusive if they are supported by substantial evidence. See 42 U.S.C. §§ 405(g),

1383(c)(3). Judicial review of the ALJ's decision is limited to determining whether

"substantial evidence" supports the decision. See Monsour Med. Ctr. v. Heckler, 806

F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may

not undertake a de novo review of the ALJ's decision and may not re-weigh the

evidence of record. See id. In other words, even if the reviewing court would have

decided the case differently, the ALJ's decision must be affirmed if it is supported by

substantial evidence. See id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the

10

evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of "evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250(1986).

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50( a), "which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If "reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *See Id.* at 250-51 (internal citations omitted). Thus, in the context of judicial review under § 405(g), "[a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion." *See Brewster v. Heckler*, 786 F .2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of the

11

plaintiff's subjective complaints of disabling pain, the ALJ "must consider the subjective pain and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). "A district court, after reviewing the decision of the [Commissioner] may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the [Commissioner]'s decision with or without a remand to the [Commissioner] for rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of both DIB and SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A),

12

1382(c)(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(1), 416.920(a)(4) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in

13

combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to his past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

## B. Whether ALJ's Decision is Supported by Substantial Evidence

On December 19, 2008, the ALJ found that plaintiff had not been under any type of disability within the meaning of the Act from January 20, 2006, through the date of his decision. The ALJ concluded that, despite plaintiff's severe impairments (cervical and lumbar spondylosis, cervical facet syndrome, and a bipolar disorder), he retained a RFC to perform a limited range of light work, he retained a RFC to lift up to ten pounds frequently and up to twenty pounds on occasion, and to sit, stand, and/or walk for the duration of an eight-hour workday, but that he must alternately sit and stand/walk at about thirty minute intervals. The ALJ determined that, due to his cervical and lumbar impairments, plaintiff cannot perform activities requiring repetitive neck turning and is limited to the occasional use of his left arm for tasks such as reaching, handling, fingering, and feeling. In addition, because of his COPD, the ALJ determined that plaintiff must avoid climbing to or working at heights or with hazardous/vibrating machinery and cannot work in environments with extreme temperatures or humidity or where odors, dusts, gases, fumes, or other respiratory irritants are present. Further, based upon his mental capacity for work, the ALJ limited plaintiff to simple, unskilled, non-production pace work, with a limitation to not more than occasional contact with supervisors, co-workers, and/or the general public. After considering the VE's testimony, the ALJ concluded that plaintiff could not perform his past work, but could perform a significant number of other jobs in the national economy, including office helper, security clerk, and information clerk.

Plaintiff seeks remand for a new hearing or an award of benefits. He contends that he was disabled from January 20, 2006 until December 19, 2008 because: (1) he

was an individual closely approaching advanced age on the established disability dates; (2) an RFC from Dr. Cagampan, a treating and examining physician, was timely entered into evidence but not considered; and (3) he was later found disabled following a January 1, 2009 hearing with the same record as considered in the instant case. (D.I. 18, 29) Defendant contends that substantial evidence supports the decision that plaintiff was not disabled under the Act. (D.I. 32)

### 1. Medical opinions; improvement of condition

Plaintiff alleges that the ALJ erred in giving greater weight to the December 18, 2006 opinion of Dr. Goldsmith, without giving weight to Dr. Borek's June 7, 2007 opinion. An ALJ is free to choose one medical opinion over another where the ALJ considers all of the evidence and gives some reason for discounting the evidence he rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer*, 186 F.3d at 429 ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."). In this case, the ALJ detailed his reasons for affording significant weight to the assessment of Dr. Goldsmith and for discounting the assessment of Dr. Borek. In addition, the ALJ made reference to plaintiff's "temporary" exacerbation of symptoms.

"[C]hanged symptoms, signs and laboratory findings are the only relevant indicia of medical improvement under the regulations." *Rice v. Chater*, 86 F.3d 1, 2 (1st Cir. 996) (citing 20 C.F.R. § 404.1594(b)(1) & (7), (f)(3)); *see also Wahwassuck v. Astrue*, 2008 WL 818262, at *4-5 (D. Idaho Mar. 24, 2008) ("medical improvement standard requires that there be medical evidence demonstrating an improvement in symptoms, signs or laboratory findings").

16

After considering the opinions of Drs. Goldsmith and Borek and the evidence of record, the ALJ concluded that Dr. Goldsmith's opinion was more consistent with the overall evidence of record than Dr. Borek's opinion. The ALJ explained that Dr. Borek's opinion highlighted a short-term exacerbation of plaintiff's symptoms and that, after Dr. rendered his opinion, plaintiff exhibited normal gait and objective strength findings. The ALJ referred to electrodiagnostic studies performed in December 2007 that showed no evidence of carpal tunnel syndrome, peripheral neuropathy or cervical radiculopathy affecting the left upper extremity. (D.I. 22, Tr. 84, 426-27) The ALJ also referred to plaintiff's subjective statement in May 2008 that, although he continued to have pain, he was "doing better," that facet joint nerve ablation reduced pain by about thirty percent, and that plaintiff had lost weight. (*Id.* at 84, 406)

Finally, the ALJ opined that since June 2007, subsequent exams discerned plaintiff to walk with a normal gait and to manifest a full range of motion in his shoulder, elbows, wrists, and hands. (*Id.* at 84) However, in May 2008, plaintiff exhibited an antalgic gait,[7] not a normal gait, and slowed speed. (*Id.* at 406) At that time, he rated his pain as eight on a scale of one to ten and continued to take the pain medications Oxycodone and Percocet four times per day. (*Id.* at 405) When plaintiff was examined in May 2008, the musculoskeletal examination revealed "cervical spine with dec[reased] [range of motion] and decreased mobility of spine with walking and forward bending/ flexion, extension, lateral flexion. Negative radicular stretch signs." (*Id.* at 406) As

---

[7]A limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side. *The American Heritage Stedman's Medical Dictionary 49* (2d ed. 2004).

17

discussed by the ALJ, examinations of plaintiff in 2006 and 2007 typically revealed a limited range of motion in the cervical spine. (*Id.* at 77) In addition, the ALJ's findings discuss that the follow-up MRI of the lumbar spine taken in April 2008 revealed scoliosis convex to the left in the mid-lumbar spine and significant end-plate changes and facet discs at multiple levels in the lumbar spine; findings that generally have remained unchanged since 2004. (*Id.* at 77, 403)

Upon a review of the record as a whole, the undersigned concludes that the ALJ's finding that plaintiff's exacerbation of symptoms around the time of Dr. Borek's report was temporary is not supported by substantial evidence. The subjective medical evidence indicates that plaintiff's condition either remained static or worsened. Further, while the ALJ provided a basis for his assignment of weight to the opinions of Drs. Goldsmith and Borek, as discussed, his reasoning is not supported by substantial evidence.

### 2. Mental health opinion

Plaintiff alleges that the ALJ overlooked the opinion of Dr. McGraw. To the contrary, the ALJ specifically discussed and evaluated Dr. McGraw's opinion and afforded it significant weight.

### 3. Age

Plaintiff turned fifty during the pendency of the application and he mentions this fact in his motion and supporting brief. While not clear, it appears that he believes the ALJ erred in the application of age categories as defined by 20 C.F.R. § 404.1563 and

§ 416.963. When plaintiff first sought DIB, he was defined as a younger individual but, during the pendency of his application, he turned fifty years of age and, therefore, became a "person closely approaching advanced age" category.

When making a determination, the Social Security Administration will use the age category that applies to an individual during the period for which disability must be determined. It is unclear in reviewing the ALJ's decision whether he considered plaintiff's change in status from a younger individual to an individual closely approaching advanced age. While the age category is referenced in his findings, the ALJ made no mention of plaintiff as an individual closely approaching advanced age when he posed his hypothetical question to the ALJ.

### 4. Dr. Cagampan's report

Plaintiff argues that Dr. Cagampan's report, dated August 20, 2009, was not considered, yet it was later relied upon in a subsequent disability filing wherein plaintiff was awarded disability benefits. The report was not before the ALJ when he denied plaintiff benefits. Plaintiff submitted the report upon review of the ALJ's December 19, 2008 decision denying him benefits. The Appeals Council "looked" at Dr. Cagampan's report but did not consider it. The Appeals Council stated, "[t]his new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 19, 2008." (D.I. 22, at 2)

When a claimant submits evidence after the ALJ's decision, that evidence cannot be used to challenge the ALJ's decision on the basis of substantial evidence. See *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). This court, however, may order a sentence six remand based upon evidence submitted after the ALJ's decision, but only if

19

the evidence satisfies three prongs: 1) the evidence is new; 2) the evidence is material; and 3) there was good cause why it was not previously presented to the ALJ. *Matthews*, 239 F.3d at 593.

Here, plaintiff does not meet the required prongs. While the evidence is new, it is not material to plaintiff's claim for benefits from January 20, 2006 to December 19, 2008. The report, dated August 20, 2009, speaks to a time after the disability period in question. "[A]n implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984); *See also Nieves v. Commissioner of Soc. Sec.*, 198 F. App'x 256, 260, n.3 (3d Cir. 2006) (unreported) ("Our determination [that the ALJ's decision in 2001 was based on substantial evidence] is in no way swayed by the fact that in October of 2003 an ALJ determined that the petitioner was disabled. As per 42 U.S.C. § 405(g), our review is limited to the evidence in the record at the time of the 2001 decision of the ALJ and we are therefore not required, nor able, to consider this subsequent ALJ ruling when rendering our decision."); *Bruni v. Astrue*, 773 F. Supp. 2d 460, 473-74 (D. Del. 2011) ("The fact that [a] subsequent application was successful does not itself meet the new evidence standard articulated in *Szubak.* Hence, the court sees no basis to remand pursuant to the sixth sentence of 42 U.S.C. § 405(g)").

Dr. Cagampan's report is not material to the question of whether plaintiff was disabled on or before the ALJ's December 19, 2008 decision denying benefits. Plaintiff

20

has failed to provide a basis for a sentence six remand. Moreover, the subsequent award of benefits does not establish an entitlement to benefits in the instant case.

### 5. Consultative examination

Plaintiff claims that error occurred because he was not physically evaluated by a third-party Social Security physician. The record reflects that plaintiff underwent a mental examination by Dr. McGraw.

The applicable regulations allow, but do not require, an ALJ to seek the opinions of a medical expert. *See* 20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii). Accordingly, a decision regarding whether to order a consultative examination or a medical advisor rests in the sound discretion of the ALJ. *See Bonanno v. Commissioner of Soc. Sec.*, 2009 WL 82694, at *2 (3d Cir. Jan. 4, 2009) (The regulations provide that the ALJ "may," but is not required to, consult medical experts. 20 C.F.R. 416.927(f)(2)(iii)).

Here, the ALJ discharged his duty and properly exercised his discretion by reviewing the evidence of record with regard to plaintiff's physical impairments. The evidence of record included hospital records, treatment notes and assessments from state agency physicians. The court finds that plaintiff's medical history was adequately developed on the record, there was no need for a physical consultative examination, and no error by the ALJ.

### 6. Hypothetical question

As the Third Circuit explained in *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984):

> Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally

ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy. While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.

Reliance on an expert's answer to a hypothetical question will not constitute

substantial evidence unless all credibly established limitations are included; remand is

required where the hypothetical question is deficient. *Anderson v. Astrue*, 825 F. Supp.

2d 487, 498 (D. Del. 2011) (citations omitted). "A hypothetical question must reflect all of

a claimant's impairments that are supported by the record; otherwise the question is

deficient and the expert's answer to it cannot be considered substantial evidence."

*Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Third Circuit case law and governing regulations have provided guidance on

whether a limitation is "credibly established:"

[First, l]imitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. [Second, and r]elatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. [Third, l]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible. The ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason. Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it.

*Rutherford*, 399 F.3d at 554.

The final responsibility for determining a claimant's RFC is reserved to the Commissioner. *Breen v. Commissioner of Soc. Sec.*, 2012 WL 5503774, at *3 (3d Cir. Nov. 14, 2012) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). At bar, the ALJ determined that plaintiff had the physical RFC: (1) to lift up to ten pounds frequently and up to twenty pounds on occasion; (2) to sit, stand, and/or walk for the duration of an eight-hour workday, but he must alternatively sit and stand/walk at about thirty minute intervals; (3) due to cervical and lumbar impairments, plaintiff cannot perform activities requiring repetitive neck turning and he is limited to the occasional use of his left upper extremity for tasks such as reaching, handling, fingering, and feel; (4) must avoid climbing to or working at heights or with hazardous/vibrating machinery; and (5) due to otherwise controlled COPD, cannot work in environs with extreme temperatures or humidity or where odors, dusts, gases, fumes, or other respiratory irritants are present. In addition, the ALJ found that plaintiff had the mental RFC for simple, unskilled, non-production pace work, but that he is limited to not more than occasional contact with supervisors, co-workers, and/or the general public. (D.I. 22, Tr. 85)

The hypothetical posed to the VE did not include the same RFC findings that the ALJ made at step five. The hypothetical does not include reference to plaintiff's lumbar condition, his status as an individual closely approaching advanced age, or the non-production pace limitation. Given the failure to include these factors, and the Third Circuit's mandate to include everything in a hypothetical based on the relevant physical and mental RFC's, remand is appropriate.

23

## V. CONCLUSION

For the reasons stated, the court remands the case for further proceedings consistent with this memorandum opinion. Plaintiff's motion for summary judgment will be granted and defendant's motion for summary judgment will be denied.

An appropriate order shall issue.